# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF PENNSYLVANIA

_____

_____

Andrew Fields III

_(In the space above enter the full name(s) of the plaintiff(s).)_

3:18-cv-306

- against -

Federal Bureau of Prisons Et., AL.,
Paedro - Educational Supervisor
Dressler - Unit Manager
Chappell - Correctional Officer
Hess - Correctional Officer,
Stroud - Correctional Officer
Ditz - Counselor, Nurse Barth
Jennifer Enigk - S.M.U Psychologist
Giligan - Correctional Officer, Nurse Potter
Benedict - Correctional Officer, Nurse Farminger
Scott - Lieutenant, Nurse Robinson

_(In the space above enter the full name(s) of the defendant(s). If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed in the above caption must be identical to those contained in Part I. Addresses should not be included here.)_

**COMPLAINT**

under the
~~Civil Rights Act, 42 U.S.C. § 1983~~
(Prisoner Complaint)
28 U.S.C § 1331
(★) Bivens v. Six Unknown Fed Narco Agen

Jury Trial: ☑ Yes ☐ No
(check one)

**FILED
SCRANTON**

FEB 0 5 2018

PER _____
DEPUTY CLERK

I.    **Parties in this complaint:**

A.    List your name, identification number, and the name and address of your current place of confinement. Do the same for any additional plaintiffs named. Attach additional sheets of paper as necessary.

Plaintiff    Name   Mr. Andrew Fields III

ID #   04595-033

Current Institution   United States Penitentiary Lewisburg

Address   P.O. Box 1000

LEWISBURG, PA 17837

B.  List all defendants' names, positions, places of employment, and the address where each defendant may be served. Make sure that the defendant(s) listed below are identical to those contained in the above caption. Attach additional sheets of paper as necessary.

**Defendant No. 1**   Name  J. Rhodes - Captain                Shield #

Where Currently Employed  United States Penitentiary Lewisburg

Address  P.O. Box 1000

Lewisburg, PA 17837

**Defendant No. 2**   Name  Colbert - Warden                Shield #

Where Currently Employed  United States Penitentiary Lewisburg

Address  P.O. Box 1000

Lewisburg, PA 17837

**Defendant No. 3**   Name  Trouteman - Lieutenant                Shield #

Where Currently Employed  United States Penitentiary

Address  Lewisburg, P.O. Box 1000

Lewisburg, PA 17837

**Defendant No. 4**   Name  Wilson - Lieutenant                Shield #

Where Currently Employed  United States Penitentiary

Address  Lewisburg, P.O. Box 1000

Lewisburg, P.O. Box 1000

**Defendant No. 5**   Name  Leonowick - Lieutenant                Shield #

Where Currently Employed  United States Penitentiary

Address  Lewisburg, P.O. Box 1000

Lewisburg, P.O. Box 1000

## II.   Statement of Claim:

State as briefly as possible the facts of your case. Describe how each of the defendants named in the caption of this complaint is involved in this action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Attach additional sheets of paper as necessary.

A.  In what institution did the events giving rise to your claim(s) occur?  United States Penitentiary Lewisburg

B.  Where in the institution did the events giving rise to your claim(s) occur?  G-Unit Block (3rd) Third Floor (Ambulatory Restraint Cells First Floor)

C.  What date and approximate time did the events giving rise to your claim(s) occur?  Please See Attachment

DENIAL of MEDICAL TREATMENT

| | |
|---|---|
| What happened to you? | D.   Facts: Plaintiff Alleges that in Addition to the other claims mentioned Herein All while plaintiff was being unlawfully punished while in the Ambulatory Restraints for A (48) hour period from 12/31/2017 through 1/2/2018 Nurse Barth, Nurse Farmington, And Nurse Potter did Restraints checks And stood by idle As Thus Correctional Staff Kept plaintiffs Restraints extra tight "And even while plaintiffs' wrists started to develope Bleeding sores" plaintiff pleaded, Moaning And |
| Who did what? | cried to have the Restraints loosened up" thus medical staff Agreed And Approved the Restraints to be feasible to be Applied for A continued (48) hr period by legal Standards. |

**Paedro**- collected Plaintiffs grievances And did not Allow plaintiff copies

**Dressler**- collected plaintiff grievances And did not process them or Return them

| | |
|---|---|
| Was anyone else involved? | **Chappell**- Retaliated Against plaintiff by spraying plaintiff with pepperspray excessivly  **Hess**-Assisted Chappell in subjecting plaintiff to unnecessary pepper spray  **Stroud**- Falsified And sexually harassed plaintiff and staged gladiator Fights  **Ditz**- Refused to Allow plaintiff the Right to seek Redress via grievance program |
| Who else saw what happened? | **Giligan** And other unknown Officers exercised deliberate indifference to safty  **Jennifer Enigk**-Retaliated with Falsified incident Reports for Officers  **Benedict**- Falsified incident Reports in order to have plaintiff placed in Restraints  **LT. Scott**- gave orders to Keep plaintiffs Restraints extra tight etc. |

**III.   Injuries:**

If you sustained injuries related to the events alleged above, describe them and state what medical treatment, if any, you required and received. As A Result of All the Defendants Malicous And sadistical Action" Plaintiff has suffered physical Abuse, Mental, emotional distress And A change of Character All in the Form of psychological impairment with Multiple Abrasions, larcirations, opened wounds larcirations, swellen And numbness to the hands, wrists and Ankles (Arms enlargment)

**IV.   Exhaustion of Administrative Remedies:** Defendants Denied Plaintiff Right to File And/or Fully Exhaust Administrative Remedies

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that " [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a

Pg. - 3 - of 32 pgs

prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Administrative remedies are also known as grievance procedures. *PLEASE SEE Complaint Attachments*

A.   Did your claim(s) arise while you were confined in a jail, prison, or other correctional facility?

Yes **X** No ____

If YES, name the jail, prison, or other correctional facility where you were confined at the time of the events giving rise to your claim(s). *United States Penitentiary LewisBurG*

_____

B.   Does the jail, prison or other correctional facility where your claim(s) arose have a grievance procedure?

Yes **X** No ____ Do Not Know ____

C.   Does the grievance procedure at the jail, prison or other correctional facility where your claim(s) arose cover some or all of your claim(s)?

Yes **X** No ____ Do Not Know **X**

If YES, which claim(s)? *Plaintiff was denied Right to File Administrative Remedies.*

D.   Did you file a grievance in the jail, prison, or other correctional facility where your claim(s) arose?

Yes **X** No ____

If NO, did you file a grievance about the events described in this complaint at any other jail, prison, or other correctional facility?

Yes ____ No **X**

E.   If you did file a grievance, about the events described in this complaint, where did you file the grievance? *Plaintiff handed Grievance to his Unit Supervisor Mr. Dressler Nov. 2017*

1.   Which claim(s) in this complaint did you grieve? *Plaintiff Attempted to Grieve Entire complaint," A full copie was Attached to Nov. 017 Grieve*

2.   What was the result, if any? *Staff NEVER Returned ANSWER - other times At begining of Filing Prison Supervisors Refused to provide forms.*

3.   What steps, if any, did you take to appeal that decision? Describe all efforts to appeal to the highest level of the grievance process. *Plaintiff was denied the Necessary Grievance forms - And Plaintiffs mail was tampered with once plaintiff tried to File to the higher ups*

_____ *(Please SEE Complaint)*

_____

Rev. 10/2009

**F.** If you did not file a grievance:

1. If there are any reasons why you did not file a grievance, state them here: Plaintiffs life was threatened, Plaintiff did not receive Asistance From his Unit Supervisors "but In-Return denied Access to the grievance forms plaintiff needed. In order to Successfully Exhaust Administrative Remedies

2. If you did not file a grievance but informed any officials of your claim, state who you informed, when and how, and their response, if any: Plaintiff wrote the Office of Inspector General (Please see Compaint) Plaintiff Filed Grivances to the B.O.P. NorthEast Regional Office (Please see complaint) Plaintiff wrote to the Central B.O.P. Office In Washington, Plaintiff NEVER received Any responses From thee Above Agencys'

**G.** Please set forth any additional information that is relevant to the exhaustion of your administrative remedies. Plaintiff has Filed Several Administrative Remedies over the years And Finds it Rather Strange to Not have Receive No Response From the Agencies he has written And Noticing the Arbitrary Acts of thus staff here A U.S.P Lewisburg being Carried out it was plain to see that my mail was being tampered with And I was Being denied the Right to seek Redress From the Grievance Program but only being given the Run-Around with Receiving Forms etc.

<u>Note:</u> You may attach as exhibits to this complaint any documents related to the exhaustion of your administrative remedies.

## V.   Relief:

State what you want the Court to do for you (including the amount of monetary compensation, if any, that you are seeking and the basis for such amount). Plaintiff SEEKS Relief In the Form of One hundred million dollars And No CENTS" That is [$100,000,000.00] dollars And Immediate Release From Federal Custody.

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

**VI.**     **Previous lawsuits:**

A.     Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?

On these claims

Yes _____ No **X**

B.     If your answer to A is YES, describe each lawsuit by answering questions 1 through 7 below. (If there is more than one lawsuit, describe the additional lawsuits on another sheet of paper, using the same format. )

    1.     Parties to the previous lawsuit:

    Plaintiff _____

    Defendants _____

    2.     Court (if federal court, name the district; if state court, name the county) _____

    3.     Docket or Index number _____

4.    Name of Judge assigned to your case    N/A

5.    Approximate date of filing lawsuit    N/A

6.    Is the case still pending?   Yes _____ No _____

If NO, give the approximate date of disposition    N/A

7.    What was the result of the case? (For example: Was the case dismissed? Was there judgment in your favor? Was the case appealed?)    N/A

_____

_____

C.    Have you filed other lawsuits in state or federal court?

Yes _____ No _____

On other claims

D.    If your answer to C is YES, describe each lawsuit by answering questions 1 through 7 below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same format.)

1.    Parties to the previous lawsuit:

Plaintiff    N/A

Defendants    N/A

2.    Court (if federal court, name the district; if state court, name the county)    N/A

3.    Docket or Index number    N/A

4.    Name of Judge assigned to your case    N/A

5.    Approximate date of filing lawsuit    N/A

6.    Is the case still pending?   Yes _____ No _____

If NO, give the approximate date of disposition    N/A

7.    What was the result of the case? (For example: Was the case dismissed? Was there judgment in your favor? Was the case appealed?)    N/A

_____

_____

**I declare under penalty of perjury that the foregoing is true and correct.**

Signed this    1ᔑᵗʰ    day of    MARch    , 20 18 .

Signature of Plaintiff    Andrew Fields III

Inmate Number    ANdREW FiElds III

*Rev. 10/2009*

Pg. - 7 - of 32 pgs.

Institution Address   UNited States Penitentiary
                      Lewisburg
                      P.o.Box 1000
                      Lewisburg, PA 17837

Note:   All plaintiffs named in the caption of the complaint must date and sign the complaint and provide
        their inmate numbers and addresses.

I declare under penalty of perjury that on this ___I___ day of __MARch_____, 20_18_, I am delivering
this complaint to prison authorities to be mailed to the Clerk's Office of the United States District Court for the
Eastern District of Pennsylvania.

Signature of Plaintiff: _Andrew Fields III_____

# INTRODUCTION

Every since Plaintiffs' arrival here at U.S.P Lewisburg plaintiff has been discriminated against for mainly what it appears to be plaintiffs' choice of sexual gender preference whereas officers subject plaintiff to all sorts of deliberate harrassment ranging from: **EXCESSIVE UNNECESSARY USE OF PEPPER SPRAY, CRUEL AND UNUSUAL PUNISHMENT, MAIL TAMPERING INADEQUATE CELLING** whereas plaintiff is always housed in cells located at the rear of the housing unit tiers, **DENIED RECREATION, DENIED ACCESS TO THE LAW LIBRARY, DENIED THE RIGHT TO RECEIVE LEGAL COPIES, GRIEVANCE PROCEEDURE** and **SEXUAL HARRASSMENT** whereas officers often ask plaintiff does he fuck his cellmates and vice versa.

Plaintiff alleges that **here** at U.S.P Lewisburg as with a previous prison plaintiff was up against the same **SEXUAL HARRASSMENT** by the so-called inmate and staff members Gay Nation movement affilation. Plaintiff asserts that officers do what Gay Nation member inmates tell them to supposity for sexual favors ranging from taking orders from inmates, confiscating another inmates valuables property in order to be given to the officers favorite inmates, to arranging cellmates together for the purposes of staging of gladiator fights or targeting Non-Gay Nation affiliates with sexual abuse and other attacks during cell housing.

Staff is careful to prepare celling the homosexual inmates with comfortable celling accommodations but when an inmate is presume to be heterosexual he's left to be celled up with the mentally disturbed or problematic inmates that may have issues\beef (problems) often with staff officers "so with thus being said "usually the inmate housed with the problematic\mentally ill patient inmate is subjected to the SAME punishment **and** treatment as the mentally ill inmate "e.g., **being pepper sprayed, denied recreation, neglected** by staff and having the turn of the cold shoulder ETC.

Staff knows the inmates whom engage in homosexual activities and whom don't, and for staff to arrange the celling in opposition to gays with gays and heterosexuals with heterosexuals could other wise knowingly create problems amongst thus inmates.

Thus officers continue to remain in search of the perfect homosexual cellmate who's in cohort to the officers plans and acts when celling me with thus inmates" and when thus cellmate match up is not successful for what-ever reason staff subjects me to other forms of malicous retaliatory acts of staff misconduct to make up of unfortunate endeavers. Staff consistantly try to persuade me to assault other inmates cellies and in-return tries to persuade cellmates into assaulting me.

Plaintiff alleges that here at U.S.P Lewisburg the gay nation member prisoners and staff members take part in what is to believed to be a favor for a favor retaliatory hits whereas a sexual favor amongst a staff member and inmate rivals other inmates can get staff members to commit corrupt acts towards their inmate adversaries or especially to hated non-affiliate gay nation members such as plaintiff.

Plaintiff avers that through sexual favors also a prisoner can manipulate a staff member into giving another prisoner a unfit cellmate that may cause another bodily harm or harm and damage to his personal property by means of retaliatory acts. Sexual favors could also be used as tools to persade a staff member into stealing another prisoners property and to be given to the staff members gay lover as gifts such as radios, new magazines, the exchange of inmates property via bogus cell searches i.e., for example "the exchange of a pair of new headphones for a wornout used pair", plaintiff asserts just basically anything of good value and worth.

# Mail Tampering And Denied Right to file Grievance

## Part (A)

1. On 7/27/2017 I submitted A Administrative Remedy regarding (2) pieces of mail that I placed inside of the United States Penitentiary Lewisburgs mailing system by handing thus mail to Officers working the second shift in G-Block, the shift that collect institutional mail.

2. Plaintiff handed thus mail to an officer who is referred to as Officer Zegarski Thus (2) pieces of mail contained Certified And Return mailing receipts. — No. #7011·3500·0001·3791·1331, ., #7011·3500·0001·3791·1355

3. Once Plaintiff received the Certified Receipt forms back in the mail the next day plaintiff noticed that thus certified receipts did not have a post office stamped receive date from the U.S. postal service.

4. At this point after 4:00 p.m mail hand-out plaintiff stopped Officer Zegarski at my cell door to question him About the (2) certified receipts he had given plaintiff during mail hand-out, "plaintiff informed Officer Zegarski that they haven't been stamped by the post office" Officer Zegarski stated he didn't know what happened.

5. After the aforementioned occurred Plaintiff then proceeded on to Fully Exhaust institutional Remedys. On 7/27/2017 Plaintiff stopped the unit Counselor Ditz and asked Counselor Ditz for an emergency BP-9 form so Plaintiff could start a emergency Sensitive Administrative Remedy directly to the Wardens Office," in other words skipping over the First stage (level 1) over the Unit Supervisors and begining at level (2) straight to the Wardens level. At this point Counselor Ditz denied plaintiff the Right to File directly to the Wardens Office," stating, you

must First File to the Unit Supervisors level (through Counselor Ditz) And that plaintiff can't File A Sensitive complaint to the WARDEN.

6. Plaintiff then Accepted the Informal Resolution (level 1) Form From Counselor Ditz And Filed the Administrative Remedy complaint to the level (1) Unit Supervisors And Counselor Ditz.

7. After NEARly (30) days And having Not RECEIVED A RESPONSE From Counselor Ditz plaintiff stopped Counselor Ditz during the Unit Supervisors housing Unit inspection And question Counselor Ditz About A Response to the 7/27/2017 Informal Resolution (BP-8) And Counselor Ditz stated, "that the post office is Not suppose to stamp RECEIVE dates on CERTIFIED RECEIPTS And this is when I plaintiff proceeded on in Filing this EMERGENCY SENSITIVE (BP-10) directly to the North EAST Regional Office At 2nd & Chestnut Street, U.S. customs House - 7th Floor, Philadelphia, P.A 19006

8. Plaintiff Alleges that in Addition to the Grievance hindering Acts of his Counselor Ditz mentioned herein. Plaintiff Makes Note that ON OR Around middle of November 2017 plaintiff handed to his Unit MANAGER Mr. DRESSLER A multi-page Administrative Remedy consisting of Roughly A (8) page OR MORE SELF handwritten grievance complaint that he NEVER RECEIVED A RESPONSE IN RETURN.

9. Plaintiff Also Filed A **Freedom of information Act Request** ON 9/28/2017 From which plaintiff NEVER RECEIVED A RESPONSE WHEREAS plaintiff REQUESTED the Full NAMES And job titles of specific staff staff members he had wish to File complaints Against here At U.S.P Lewisburg. SEE Exhibit (A) Plaintiff Also gave his Educational school teacher A handwritten copie of the SAME complaint sometime during october to FORWARD to the Education department For legal copies since the legal copier supervisor NEVER NEVER MAKE institutional Rounds" And thus complaint WAS NEVER RETURNED to plaintiff "EVEN though plaintiff WAS tring to pay For thus copies

Time   2:13 p.m
Date   9-28-2017

Andrew Fields III, Reg.# 04595-033
United States Penitentiary
    P.o. Box 1000
Lewisburg, PA 17837

Federal Bureau of Prisons
  801 U.S. Customs House
Second & Chestnut Streets
Philadelphia, PA 19106

Re: Request for Federal Bureau of Prisons staffs
    Full names and Job titles.

I am filing this request seeking the full names of the
second Shift offices whom worked the G-unit housing on
9/6/2017 at 4:00 p.m mail collection time. I need this information
for litigational purposes only. Thanks!

                              Andrew Fields III, 9/28/2017

## Retaliatory Falsified Incident Report

### Part (B)

1. On 8/2/2017 the S.M.U psychologist Ms. Enigk stopped at my cell door and asked plaintiff, and his cellmate would plaintiff like to receive a thought exercise packet from the psychology department and I approached the cell door and stated yes.

2. At this point Ms. Enigk dropped the two packets on the floor and pushed them under the door. Plaintiff then made reference to some old assignments I was assigned that needed to be completed and returned to the psychology department.

3. Plaintiff informed Ms. Enigk that these unit officers must have not been sending my packets to the psychology department because I've been sending my Assignment by mail," i.e., placing thus assignments in the U.S.P Lewisburg mailing system at mail collection hours.

4. At this point Ms. Enigk told me to repeat myself," Ms. Enigk stated she couldn't hear what plaintiff was saying through the door cause the fans where to loud out in the hallway," After repeating myself several times plaintiff angryly stated," These pussy CO's (correctional officers) are not sending my assigments to the psychology department when plaintiff use the U.S.P Lewisburg mailing system.

5. At this point Ms. Enigk stated," these officers are not bathering your mail and your the one causing the problems lieing on the Administrative Remedies about officers tampering with those certified receipts. Ms. Enigk then stated," I am going to fix you Fields. / in a angrey tone and then stomped off back towards the front grill without giving me and my cellmate our psychology mental health exercise packets. Late that day I received a incident report code 206 where Ms. J. Enigk falsified allegations

Accusing me plaintiff of saying to herr that plaintiff want to eat her pussy. Plaintiff received a disciplinary hearing and was found guilty.

# Excessive and unnecessary use of pepper Spray Canister
## Deliberate indifference to ones security and safty

Part (C)

1. Plaintiff alleges that the following incident occurred around March "2017" as a result of U.S.P Lewisburg G-Block housing units officers' deliberate indifferent actions of not separating Dorian Williams and plaintiff posed an immediate threat after knowing plaintiff and Dorian Williams did take apart in a altercation" thus officers Giligan and other unknown correctional officers neglected all warning signs. Plaintiff asserts that thus officers knowingly and intentionally observed that plaintiff and his cellmate Dorian Williams had a altercation that left Dorian Williams a mentally disturbed prisoner with multiple brus bleeding and larcerations.

2. Dorian Williams", a mental health patient stopped officer Giligan and other unknown U.S.P Lewisburg correctional officers at the cell door to ask thus officers could he be seen by medical staff and moved out of the cell he shared with plaintiff because he and plaintiff had a fight.

3. Dorian Williams showed officers Giligan and other officers standing at the door the blood dripping on his shirt and from his face, the swellen on his forehead, and serious bleeding and swelling to his left ear.

4. At this point officers Giligan and others called plaintiff to the door and asked plaintiff was everything alright. The officers then stated, "Fields (which is plaintiff) clean this stuff up", meaning all the blood scattered throughout the cell and all over his cellmate Dorian Williams

5. At this point stated, Dorian Wialliam NEEDS to be moved, where Not getting As CELLMATE OFFICERS refused to give DORIAN WilliAMS medical treatment or SEPARATE the two AND instead ordered plaintiff And his cellmate Dorian WilliAMS A ORDER to CLEAN UP the MESS And About (60) days later that the following incident occured.

## EXCESSIVE And UNNECESSARY USE of PEPPER Spray CANistER

## PART (D)

1. ON 5/1/2017 AROUND 3:20 p.m plaintiff WAS IN his cell standing At the REAR of the cell with No Shirt chaNging his shorts All which point plaintiff observed his cellmate DoRiAN Williams get out of his bed And walked over to the cell door to stop A Officer ChAppell whom WAS walking on the housing UNit RANGE.

2. As plaintiff stood At the REAR of the cell changing into A differant set of undershorts with No shirt on. Plaintiff listened As his cellmate Dorian Williams AskED thus OFFiceR Chappell At the door could he be seen by the MEDICAL NURSE for A bleeding EAR.

3. At this point Officer Chappell started yelling "Go to the back of the cell! Now! Get to the back of the cell! And As thus OFFICER spoke he quickly opened the food slot of the cell and began profusely started spraying A PEPPER SPRAY MK-9 (OC) dispenser into the cell several times.

4. At this point plaintiff And his cellmate DoRiAN Williams complied by the Officers orders to lay FACE down in A soaking wet floor of PEPPER SPRAY For NEARly (15) or (20) minutes At which point WAS giving A ORDER to submit to hand-RestraiNts At which point plaintiff And his cellie complied And WAS Removed From the cell And escourted to A shower where they REMAINED For NEARly (45) minutes IN hand-RestraiNts As plaintiffs EYE's burned And uppER body burned As A Result of Not having ON A Shirt And the

5. Result of thee officer Chappell spraying plaintiffs' whole upper body from the back as plaintiff stood at the rear of the cell changing out in clothes when the incident took place.

6. Plaintiff maintains that once he had the opportunity to speak with the medical department he reported injuries between his legs and swollen hands "but was never given medical treatment.

## Mishandling of Plaintiffs' personal Property

7. Following thee aforementioned incident," Plaintiff alleges that maybe twenty minutes prior to plaintiff and Dorian Williams being removed from the Showers and placed in differant cell locations, Officer Brown entered the shower area to question plaintiff and Dorian Williams about their property that was still in the cell that the altercation occurred.

8. Plaintiff told Officer Brown that he slept on the bottom bunk while Dorian Williams slept on the top bunk plaintiff went on to mention that Dorian Williams was a mentally ill inmate who didn't have anything in the cell but a bottle of coco butter lotion and a bottle of shampoo and a few personal papers under his mattress. While plaintiff himself slept on the lower bunk and possesed a laundry bag full of legal documents about 10" inches in height and multiple issues of magazines and other personal property stacked along the side of the surface of his bed.

9. Once Dorian Williams and Plaintiff was removed from the Shower stalls and placed inside separate cell locations Officer Brown and another unidentified officer sorted out their property.

10. Plaintiff Asserts that once he received his belonging he Noticed his $50.00 dollar Sony digital Radio, And Muscle development Magazine, Rapp Songs plaintiff wrote where missing from his property. Later in the weak," plaintiff over heard Dorian Williams was tring to sale the Sony digital Radio by Announcing it (the sale) on the housing (G) Unit cell block tier.

## Stageing of Gladiator Fights Deliberate harrassment

**Part(E)**

1. Plaintiff maintains that after making several verbal and handwritten complaints to the wardens office and the G-Block housing units officer in charge and Lieutenants regarding staffs intentional malicous acts to pair plaintiff with a cellmate that is either mentally disturbed And without Any moral decency or either with a Gay Nation movements most violent members whom has Nothing to loose.

2. Plaintiff Avers that U.S.P Leiwisburg staff ignored plaintiffs' warnings And written complaints and shortly after the following orchestrated events occurred.

3. After plaintiffs incident with Dorian Williams plaintiff was immediatly Afterwards taken to cell #314 which was occupied by Another well known Gay Nation movement member whom Refused Plaintiff as a cellmate while talking to a Lieutenant Scott At his cell door while plaintiff stood by in hand-restraints secured by Another officer.

4. Thus inmates in #314 Refused over And over Again to except plaintiffs' explaining to Lieutenant Scott that he didn't want to share cells with plaintiff because it would cause problems cause plaintiff was known

5. throughout the G-3 Block housing unit range to not be a active homosexual. And at this point plaintiff over heard Lieutenant Scott stated, to the cell #314 inmate well your going to have to go into restraints and that he'd be back with the Special Response team. Lieutenant Scott and other accompaning officers exited the range and ordered plaintiff to be placed into a empty cell.

# More Stageing Gladiator Fights And Deliberate harrasment

6. The following day Lieutenant Scott accompanied by several officers approached plaintiffs' cell and gave plaintiff a order to submit to hand-restraints and plaintiff complied the officer cuffed plaintiff up and stated," He's ready now," Referring to the inmate and once the #314 cell inmate was placed in the cell with plaintiff after having spent (24) hours in a empty cell with extra tight inventory hand, belly and leg restraints that left the inmate with multiple bruses and larcerations around his wrists and ankles.

7. Plaintiff asserts that eventually him and the #314 cell inmate decided that would not workout in their best interest to remain in the same cell together as cellmates", Plaintiff makes note that thus inmate then stated," if I stay in the cell with you," I'll miss on everything. And thus inmate made arrangments with the housing unit supervisors to be moved to a differant cell locations.

8. Plaintiff makes note that as with the incident and move from the Dorian Williams incident again", Plaintiff was the one who had to pack up his property and move to another cell and the Gay Nation movement member got to remain inside the cell simply cause thus inmate must have took part in a sexual act with a staff and didn't have to go through the hassle of relocating to another cell location and packing his property.

# Staging of Gladiator Fights VIA Pairing with Mentally ill

## Part (F)

1. Plaintiff with Another inmate whom was just rently Released from inventory Restraints And wareing orange paper clothing.

2. Plaintiff Arrerts that once they Reached him where he was standing the staff ordered plaintiff to enter the empty cell next door And the staff Removed the restraints from plaintiff And the NEW inmate.

3. Plaintiff Asserts that once in the cell Plaintiff tried introducing himself to the New cellmate but through conversation thus inmate Appeared to be mentally ill as they talked the inmate dumped all of his Food from off his food tray And into the cell sink (Face bowel) which had clearly not been cleaned upon plaintiff And the New mentally ill cellmate's placement inside thus cell.

4. Plaintiff Avers that once All of the food from off of the New mentally ill cellmates food tray was in the sink (Face bowel) the inmate started mashing it Altogether And started eating it with his hands out of the sink dropping portions on the dirty cell floor And picking it up And eating it Also.

5. A few weeks passed by whereas plaintiff begin to notice continuous psychotic disruptive behavior whereas thus inmate would Appear to be catching mice throughout the cell And eating them." the inmate never showered or wiped clean After himself After A stool. Plaintiff Asserts that certain officers would stop At the cell time After time to iritate the the mentally ill inmate And subliminally instigate fights between plaintiff And him. Plaintiff maintains that often times officers use other Gay Nation members inmates to Also subliminally instigate Altercations

being that the Gay Nation Movement inmates staff members would have Afore-hand already staged and organized the surrounding neighbors of plaintiff and the mentally disturbed inmates cell they shared together.

6. Plaintiff alleges that after thee aforementioned here in took place plaintiff asserts that the tension arose so greatly that one day on 11/7/2017 plaintiff was talking to officers Hess about treing to be issued extra blankets in order to cover the hot water pipes inside the cell because unlike the other housing unit cells on the tier "the cell plaintiff and the mentally ill inmate shared had two hot water pipes instead of one" so this made the cell extremely hot inside being that it was still alittle warm outside.

7. Plaintiff makes note as is written in the issued misconduct incident report plaintiff received afterwards". As plaintiff complained to officer Hess at the door about the over heated cell condition "the mentally ill disturbed inmate jumped off his bunk and struck plaintiff about the back of his head and a altercation ensued between plaintiff and the mentally disturbed inmate which eventually lead to plaintiff and the mentally ill inmate being pepper sprayed.

8. Plaintiff avers that he had verbally complained to all Lieutenants who have ever done walked through during inspections or who have worked the G-Block housing unit range especially when officers would bring a unfamiliar person to be a cellmate for plaintiff insisting that plaintiff except him.

9. Plaintiff carefully explained to these groups of Lieutenants and officers that he felt as though his life was in imminent danger whereas officers gets adrenaline rushes off of testing plaintiffs' reations to his choice of sexual gender preference and plaintiffs attitude of not being prone to the

10.   Homosexual lifestyle And prison mentality And that U.S.P. Lewisburg officers has A tendency to observe plaintiffs body size And built from exercising And Assumes that plaintiff would make A good competitor to stage gladiator fights with others whom have been carefully hand picked As other participants.

11. Plaintiff Alleges that U.S.P. Lewisburg staff Appears to be useing him As A go to prisoner when they need A inmate Enforcer or A somewhat babysitter to straighten out the prisons disobedient or disrupt Gay Nation movement inmates. Plaintiff Also feels As though he's being used to preserve Gay Nation movement inmates to A degree that once A Active sex Addicted prisoner is placed in the cell with plaintiff thus inmate is left to be subjected to weeks or months of going without sex And the normal way of prison life As he's use too living" And plaintiff Assumes that this makes better for the inmate And Gay Nation member staff to more pleasurable sexual intercourse being that thus inmate would be much more stronger in sex drive urge After being confined to A cell with plaintiff A heterosexual (23) hours a day And plaintiff Avers that "thats when unit officers begin to Agitate the cellmates causing confusion by deny plaintiff And his cellmate their Recreation, Laundry issues, showers, law library etc.. Anything to stare up conflict while thus two Are locked in. This in-return would eventually result in plaintiff or his cellmate placed in Ambulatory Restraints, the need of the special Response team, getting pepper sprayed for frivilous reasons or none At All And prevents plaintiff from getting settled in And making through with programing And maintaining clear conduct.

# Falsified incident Report in order to place one in Ambulatory Restraints And Property Mishandling of Personal Property And Cruel And Unusal Punishment

## Part (G)

1. On 12/22/2018 At Approximatly 8:00 A.M Officer Hess And other unidentified officers Approached plaintiffs' cell And gave plaintiff A direct order to submit to hand-Restraints And plaintiff complied.

2. Plaintiff was Removed From the cell And held just outside of the cell And told to Face towards the front of the housing unit Range Entrance.

3. As plaintiff glanced towards the front entrance of the housing unit tier plaintiff Noticed officer Stroud "Accompanied by several other officers escourting A inmate Robinson towards plaintiffs' direction And stopped directly At plaintiffs cell door because inmate Robinson was Repeatedly saying to the officers I Am Not going in the cell with that sex offender Fields.

4. At this point Officer Stroud held inmate Robinson Facing the wall on the side of the cell door As inmate Robinson Kept stating, "I Am Not going in the cell with him", I Am Not going in the cell with him.

5.  Plaintiff then stated, "Officer Stroud if doesn't want to be in the cell with cell with me its Not going to work," I dont want to be in the cell with him. At this point Officer Condit interrupted And stated ", why you guys can't cell together "And At this point plaintiff stated iratly to Officer Condit ", you go in the cell with him then faggot! Officer Condit then stepped back And started leaning his left side shoulder Against the wall And in A whisppering tone stated, "is your wrist going to be O.K?

6. At this point officer Stroud and inmate Robinson began exchanging words with one another regarding whether or not Robinson going to enter the cell to be plaintiffs' cellmate and this is when Officer Stroud began grabbing inmate Robbinson by the arms extremely tight," Bracing inmate Robinson while taking a Tee stance testing inmate Robinson to the floor for not wanting to go inside the cell.

7. At this moment plaintiff stated", Stroud if you slam Robinson in the ground your going to Risk loosing your Job. At this moment Officer Shomo stated", to plaintiff com down" your not in any trouble at this moment were tring to get him to go in the cell.

8. After a little more words between inmate Robinson and the Officers Arguing and pleading to enter the cell to be plaintiffs' cellmate. Plaintiff interrupted and stated " if this dude (Robinson) doen't want to be my cellie then I don't want to be in the cell with inmate Robinson.

9. At this moment Officer Shomo gave a order to Officer Stroud to Place inmate Robinson in the Shower cell. And told Officer Hess to do the same thing with Plaintiff "by placing plaintiff in a Shower cell also.

10 After remaining in the Shower stall for over (30) minutes Lieutenant Wilson Returned with the the special Response team and placed Plaintiff inside orange paper clothes and escourted plaintiff to another empty cell location where plaintiff in what is called Ambulatory Restraints

11. Plaintiff alleges that the special Response team placed hand cuffs on Plaintiffs' weist which consisted of a Black box Attached to the handcuffs to prevent plaintiffs wrists and hands from being able to move in all differants directions.

12. Plaintiff makes note that the special Response team intentionally used special trickery tactics while applying the restaints in order to make the Restraints uncomfortable and cause plaintiff unnecessary pain and suffering.

13. Plaintiff makes note that once the special Response team placed the belly chain around Plaintiffs' mid-section Lieutenant Wilson gave plaintiff a order to not make his stomach extend outward while the special Response team placed the belly chain around the top of plaintiffs' torso and ordered plaintiff to bring his cuffed hands upwards at the top of his belly and then attached the cuffed hand-restraints to the belly chain which was wrapped around plaintiffs' upper torso extremely tight "so tight that when the belly chain works it's way down towards the lower part of plaintiffs waist and plaintiff eat his meals the belly chain would be even tighter than when first applied

14. Once full application of the ambulatory restraints was said to be fully secured Lieutenant Wilson whom is a small built woman with small hands placed the tip of her fingers just at the tip of her finger nail into the side of the hand-cuffs smashing plaintiffs' wrist in a bit in order to make the tip of her finger fit between plaintiffs wrist and hand-cuff," A test thats used by law enforcement to determine whether or not hand-cuffs are too tight—the hand-cuffs should be at least a finger width wide apart from the wrist.

15. Secondly Lieutenant Wilson took four fingers and fitted the tips of her finger grabbing the back of the belly chain at which part the chain pinched the sides of plaintiffs waist tremendously causing extreme pain. Plaintiff made several requests to have thus restraints loosened up "But all requests where to no avail.

16. Plaintiff was escourted from the 3Rd floor and walked down two flights of stairs in full Restraints ", leg Restraints plus belly chain Attached to cuffed hands with a black Box extremly tight.

17. Plaintiff makes note that As mentioned early on in the complaint that Sexual favor could get A inmate out of A disciplinary Action but plaintiff can't say that this is what happened in this particular instance but for some strange Reason plaintiff was placed in Ambulatory Restraints and written up on A falsified incident Report "plaintiff lost his cell to inmate Robinson and plaintiff spent (24) hours in Ambulatory Restraints.

## Property Mishandled And Not Returned

18. Plaintiff Asserts that once he was released from the Ambulatory Restaints he received his personal property where plaintiff noticed several items missing from his property bag such as the following:
   (A) one Bottle of Shampoo, one Bottle of conditioner
   (B) one Brandnew pack of Dental floss picks, one opened pack of floss picks
   (C) one Brand New Reading Book, one Bar of coco butter Soap
   (D) one Brand new December issue of Robb Report (Not three days old)
   (E) one Brand New Dupont Register December issue (Not three days old)
   (F) civil complaint legal papers written Against USP Lewisburg Staff
   (G) Rap songs And personal papers belonging to plaintiff.
   (H) two personal photos.
   (I) commissary purchased Dictionary

19. After Noticing the missing items from his property plaintiff stopped officer Shomo one of thus officers whom Returned plaintiffs' property to ask officers Shomo where there Another missing bag of property somwhere in the property room cause All of plaintiffs' belongings' Are Not All here.

20. Plaintiff gave a discription of the missing items and officers Shomo said he would go look for plaintiffs' missing property.

21. Officer Shomo returned to plaintiffs' cell caring a bag of a few more of plaintiffs' property which was a pair of mesh shorts and three of plaintiffs' books plaintiff ordered in the mail. Once officer Shomo placed thus items in plaintiffs cell officers Shomo made a comment that plaintiff was taking some stuff back that was ment for other purposes. This officer Shomo had a smurk on his face as if he and plaintiff made some sort of deal with thus property and as if plaintiff somehow reneged on the deal.

22. At this point officer Shomo walked away and plaintiff noticed thus officer stopped at a gay nation movement members cell a couple of cells down. After officer Shomo completely exited the housing unit tier the inmate officer Shomo stopped to talk with yelled out on the tier," he's taking stuff back," he'll be back to take him back meaning officer Shomo would return to have plaintiff placed back in the Ambulatory Restraints again

# Excessive Force And Cruel And Unusual Punishment
## In the Application of Ambulatory Restraints

Part (H)

1. Plaintiff Alleges that After thee Aforementioned herein occured (10) days later on 12/31/2017 Officer benedict Approached plaintiffs cell And gave plaintiff A direct order to cuff up", (submit to hand-restraints) plaintiff Refused.

2. At this point plaintiff Asked officer Benedict what was the problem", And where am I going", Officer Benedict then stated", Your getting your cell searched", Plaintiff then Asked could he speak with the officer in charge", the Lieutenant.

3. Officer Benedict walked Away from plaintiffs' cell "And moments later Lieutenant Scott Approached plaintiffs' cell And gave plaintiff A direct order to submit to hand-restraints", Lieutenant Scott then stated", where bringing you A cellie. Plaintiff once Again "explained his circumstances About being given cellmates that where either mentally disturbed, Rivals of some sort And hand picked by corrupt officers with intent to cause plaintiff physical harm or damage to plaintiffs property or just Altogether Not compatible to be plaintiffs cellmate. Plaintiff went on to explain that Non sense Always occurs" that results to plaintiff getting pepper sprayed, loosing property, or plaintiff having to continuously keep packing his property in search of A New cell location because the officers choosen cellie for plaintiff wants to get out of the cell with plaintiff because there's No homosexual Activities going on "or either thus officers chosen cellmate wants to be in A cell with An Affiliate or A Friend From the same geographical area (state) or Ghetto.

4. At this point Lieutenant Scott stated, "I understand all of that but we still have to give you a cellie," And plaintiff still refused.

5. Lieutenant Scott then stated, "I'll be back with the Special Response team And then removed plaintiffs' identification card from the outside of plaintiffs' cell door And closed the metal blind flap on plaintiffs' cell door And then walked away.

6. Moment later plaintiff listened as officers passed out the holiday evening meal. Plaintiff makes note that when the housing unit range officers reached plaintiffs' cell "plaintiff could hear the officers laughing And joking And stating," we got extras! And one said "All we wanted was your cheese cake.

7. Later, lieutenant Scott returned to plaintiffs' cell with the Special Response team dressed in riot gear. Plaintiffs was told to strip of all his institutional clothing And removed from the cell And Again placed in Ambulatory Restraints," But this time Around "plaintiff Asserts that thus hand-restraints where cutting deep into plaintiffs' skin And weists — swelling And clogging up blood., SEE Program Statement No. P552.24 (E)(F) U.S. Department of Justice, Federal Bureau of Prisons.

8. Plaintiff was escourted down (2) flights of steps with leg Restraints that had a black security box in between the hand-cuffs' which prevented plaintiff from adjusting his hands in any form or fashion without increasing pain to his wrists., see Program Statement No. P552.24 (E)(F) U.S. Department of Justice, Federal Bureau of Prisons.

9. Officers placed Plaintiff inside an empty cell on the first floor and at this point plaintiff began to beg Lieutenant Scott to losen the hand restraints because the metal was sinking into plaintiffs' wrist causing blood presure lumps of skin unable to move in any direction and this is when Lieutenant Scott then stated I am not going to loosen the hand-cuffs you just got to keep the cuffs off of that bone (wrist bone).

10. Plaintiff alleges that he remained in the Ambulatory Restraints starting off for a (24) hour period receiving (2) hour checks by U.S.P Lewisburg first, second and third shift staff - Lieutenants, Officers and Medical staff whom examined the full body Restraints every two hours. Plaintiff avers that all of thus staff members approved plaintiffs' Restraints met Regulations standards during all Restraints checks Plaintiffs' Restraint conditions worsen during one particular Restraint checks plaintiff pointed out to Nurse Barth and Lieutenant Scott that plaintiffs' skin began to break and crack causing larcirations blood swelling to plaintiffs Arms and wrists, thus staff still refused to loosen the Restraints but instead Approved the hand-Restraints feasible to be worn long into the (24) hour period and made up falsified accusations that plaintiff was acting to aggressive and needing to com down. Plaintiff never reacted disrupptly while in the Restraints, SEE U.S. Department of Justice "Federal Bureau of Prisons" Program Statement No. 552.24 (E) (F)

11. Plaintiff makes note that he is aware that in order to receive relief from the harsh torcher of the Application of the Restraints was to take part in some sort of homosexual act with any of the staff that came through performing the Restraint checks. This is the indications all shifts staff where symbolically poertraying" otherwise staff would have loosened up plaintiffs' Restraints as to other similarly situated indivisuals.

12. Plaintiff alleges that it seems as though he was picking up on subliminal signs that read that the only way to escape the suffering and torcher was to comply with these staff members symbolic warnings. Plaintiff suspects thus staff uses torcher via the application of thus restraints as a form of "Begging for mercy" and then we will decrease the pain if a person yeilds to our commands mentality.

13. Plaintiff was yelling, moaning and groaning in pain before and after each restraint check and never received any lesser restraints relief.

## Retaliation And Cruel And Unusual Punishment
## Part (I)

1. On 1/2/2018 the Warden and the Captain made housing unit inspections and plaintiff stopped them both at his cell door and showed both the Warden and Captain how swollen plaintiffs' hands hands where and wrists developing sores and larcirations, SEE U.S. Department of Justice, Federal Bureau of prisons No. P552.24 (E)(F)(G) (Captain J. Rhodes) and (Warden Colbert)

2. Plaintiff asserts that shortly after he made a complaint to the Warden and Captain, "A Lieutenant Leonowick approached plaintiffs' cell and opened up the window Flap and just for no reason at all "Accused plaintiff of being disruptive while inside the Ambulatory Restraints cell. Lieutenant Leonowick then stated "I am here to make a (2) hour check of your restraints and then gave plaintiff a order to take a seat on the lower bunk," and plaintiff complied.

3. Once Lieutenant Leonowick entered the cell accompanied by a second Lieutenant," Wilson and several Officers, Lieutenant Leonowick gave plaintiff a order to stand up "And at this point plaintiff believed

that the Ambulatory Restraints where being taken off being that plaintiffs (24) hour time frame had expired," But this Lieutenant Leonowick unfasined the Black Box hand-restraints attached to the belly chain and took thus belly chain off and re-wrapped the belly chain "tugging extra hard to make the belly chain tighter as possible giving plaintiff a order to not extend his stomach so he could pull the belly chain around plaintiffs waist as tight as possible "As he did," so tight it was literally pinching plaintiffs' waist causing blood clot larcirations permanent scars and forced plaintiff to defecate on himself which was ignored by all staff during each shift two hour restraint checks for another (24) hour period-

Finally, Plaintiff asserts that in addition to all thee above mentioned herein Plaintiff had wished to have been able to exhaust his Administrative Remedies before first filing this civil complaint but was faced with many obstacles orchestrated by a few staff with Tort Feaser intentions to retaliate conspiratory and naturally to protect the best interest of their jobs and their co-workers jobs.

Plaintiff alleges that he is faced with life threatening circumstances as written within this complaint and understands that he can only do so much while being confined to his cell and having to rely on institutional staff to provide him with Adequate legal materials, celling accommodations, Food supply, Administrative Remedies, A Adequate mailing system etc.

And having to rely wholly on thus staff to provide thee above mentioned necessities creates conflict and confusion while thus staff performs their duties reacts like convicts or gangs themselves. As mentioned above plaintiff understands in order to commence this civil action requires specific Rules, Regulations and/or policies to bring forth. Plaintiff makes note that his complaint lacks the necessary full names and job titles of staff involved etc." which plaintiff has attempted to retrieve from the F.O.I.A, Administrative Remedies etc. But plaintiffs where hindered which forced plaintiff to urgently file this civil complaint.

CERTIFIED MAIL

nate Name: MR ANDREW FIELDS
gister Number: 04595-033
ited States Penitentiary
. Box 1000
wisburg, PA 17837

7015 1730 0000 7825 2860

FEB 01 2018

RECEIVED
SCRANTON

FEB 0 8 2018

PER ____ DEPUTY CLERK

LEGAL
MAIL

